UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

                                          Case No. 1-01-24227-dem

ASTON BAKER,                                 Chapter 11

                        Debtor.

---------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

Appearances:

Heidi J. Sorvino, Esq.
Katten Muchin Rosenman LLP
Attorneys for Sheldon Good & Company Auctions, NorthEast LLC
575 Madison Avenue
New York, New York 10022-2585

Heike Vogel, Esq.
Arent Fox PLLC
Attorneys for Sheldon Good & Company Auctions, NorthEast LLC
1675 Broadway
New York, New York 10019-5820

Roy J. Lester, Esq.
Lester & Weitz, P.C.
Attorneys for Aston Baker
600 Old Country Road, Suite 229
Garden City, New York 11530

DENNIS E. MILTON
United States Bankruptcy Judge

      Before the Court is the application of Sheldon Good & Company Auctions,

NorthEast, LLC ("Sheldon Good") for an order directing Aston Baker (the "debtor") to

reimburse Sheldon Good for legal fees and expenses incurred in connection with the court-

approved auction of debtor's real properties (the "Application").  Sheldon Good seeks the total

sum of $138,965.84 ($134,627.99 for legal fees incurred and $4,341.84 for expenses incurred).

In opposition, counsel for the debtor argued that this Court lacked jurisdiction to determine the question because the Auction Agreement provided that all disputed items were to be resolved in the New York state courts.  Counsel further contended that Sheldon Good was not authorized to retain counsel and could not receive any resulting fees and expenses from the debtor's estate.   In the alternative, counsel argued that even if Sheldon Good were entitled to such reimbursement, the amount of reimbursement which Sheldon Good sought exceeded the reasonableness standard set forth in Section 330(a) of the Bankruptcy Code.

As set forth in greater detail below, the Court finds that (1) this Court has jurisdiction to resolve the Application; (2) the Auction Agreement authorized Sheldon Good to retain counsel and required the debtor to indemnify Sheldon Good for legal fees and costs incurred; and (3) Sheldon Good is entitled to reimbursement in the amount of $102,589.49 for legal fees incurred but is not entitled to reimbursement of the $4,341.84 in claimed expenses because Sheldon Good provided no documentation to substantiate that these were actual out-of-pocket expenses.  Upon review of the invoices for legal services which Sheldon Good produced in support of the Application, the Court has deducted $32,038.50 (approximately a 24% reduction) because Arent Fox LLP ("Arent Fox") block billed and provided vague and inadequate billing entries which failed to provide the necessary justification for various telecommunications, meetings, correspondence and other tasks performed.

## JURISDICTION

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§1334(b) and 157(b)(2)(c) and the Eastern District of New York standing order of reference dated August 28, 1986.  This Memorandum Decision and Order constitutes the Court's findings of fact and

conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

Familiarity with the prior proceedings in this case is assumed. The facts relevant to this Application are detailed below. On November 15, 2001, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On January 25, 2002, the Chapter 7 case was converted to a case under Chapter 11 of the Bankruptcy Code. On June 20, 2005, the Court issued an Order authorizing the retention of Sheldon Good as the exclusive auctioneer for the debtor's real properties[1] (the "Auctioneer Order"). The Auctioneer Order approved the terms and conditions set forth in the Exclusive Real Estate Auction Agreement between Sheldon Good and the debtor (the "Auction Agreement"). Paragraph VI.6B of the Auction Agreement provided that Aston Baker would indemnify Sheldon Good from all "liabilities, losses, damages, claims, suits, causes of action third party actions ... including actual legal fees and costs.[2]"  The Auctioneer Order specifically reserved jurisdiction for this Court to determine any allowance of compensation or reimbursement of expenses to Sheldon Good, notwithstanding the terms of the Auction Agreement.[3]

---

[1] The debtor's real properties were located at (i) 1980 Campbell Road, Wall Township, New Jersey; (ii) 490 New York Avenue, Brooklyn, New York; (iii) 2325 Foster Avenue, Brooklyn, New York; and (iv) 135 Old Northwest Road, East Hampton, New York (the "Properties").

[2] Paragraph V1.6B of the Auction Agreement provides:

> Seller shall indemnify, defend and hold Auctioneer, its related and affiliated companies and their officers, directors, employees and agents harmless in respect from all liabilities, losses, damages, claims, causes of actions, third party actions, including actions of regulatory agencies, awards, decrees, judgments or expenses of any kind, including actual legal fees and costs...

[3] The first decretal paragraph of the Auctioneer Order provided:

ORDERED, that this Court hereby retains and reserves jurisdiction to determine,

On September 27, 2005, Sheldon Good held a successful auction of the Properties pursuant to the Auctioneer Order. The auction resulted in the addition of approximately twelve million dollars to the debtor's estate. Subsequently, the debtor filed three appeals[4] in an effort to overturn the Auction Agreement, vacate the Court's Order approving compensation for Sheldon Good and dispute Sheldon Good's application for reimbursement of legal expenses incurred in responding to these appeals. In January 2006, Sheldon Good retained Arent Fox as its counsel in at least two of the appeals filed (Appeal to District Court, Case No. 01-24227 and Appeal to Second Circuit, Case No. 05-7027). On August 8, 2007, the debtor and Sheldon Good entered into a stipulation whereby the debtor agreed to withdraw his Appeal to the District Court. On August 9, 2007, the debtor and Sheldon Good also entered into a stipulation whereby the debtor agreed to withdraw with prejudice the appeal filed in the Second Circuit (the "August 9th Stipulation"). The August 9th Stipulation included language stating that "[a]ny issues of attorneys' fees is reserved for later determination by the Bankruptcy Court."

On August 17, 2006, during a hearing before this Court, Arent Fox on behalf of

---

upon appropriate application therefore by Sheldon Good in accordance with 11 U.S.C. §§ 327 through 331, any allowance and/or payments to Sheldon Good, relative to the rendition of auctioneer services and the services described in the Application and Auction Agreement, notwithstanding the terms and conditions of compensation set forth in the Application and Auction Agreement[.]

Auctioneer Order at 4.

[4] Debtor filed the following Appeals:
Appeal to the Second Circuit- Aston Baker v. Sheldon Good,
Court of Appeals Docket No. 05-7027

Appeal to Second Circuit - Aston Baker v. Sheldon Good,
Court of Appeals Docket No. 05-5154

Appeal to District Court - Aston Baker v. Sheldon Good,
Case No. 01-24227

Sheldon Good requested that the Court direct the debtor to reimburse Sheldon Good for all legal fees and expenses that it incurred in defending against the appeals.  On that same date, the Court directed Arent Fox to submit to the debtor and the Court a copy of its invoice detailing the legal fees and expenses that were incurred.   On August 24, 2006, Arent Fox sent a letter to debtor's counsel and attached the relevant invoice which detailed the legal work performed on behalf of Sheldon Good between January 3, 2006 and August 17, 2006.  This invoice detailed a legal charge of $134,624.00 for 376.7 hours of work and an expense charge of $4,341.84.

On September 26, 2006, debtor's counsel filed its objections to Sheldon Good's request. The debtor's principal objections were that: (i) Sheldon Good was not authorized to retain counsel and charge any resulting fees and expenses to the debtor since Arent Fox was not retained pursuant to Section 327 of the Bankruptcy Code; (ii) if Sheldon Good were authorized to so act, the amount claimed ($138,965.84) exceeded the reasonableness standard set forth in 11 U.S.C. §330(a) and (iii) this Court lacked the authority to resolve the dispute because the Auction Agreement provided that all disputes should be adjudicated in the Courts of the State of New York.  On October 9, 2006, counsel for Sheldon Good filed its response.  Counsel for Sheldon Good contended that Sheldon Good was authorized to retain legal counsel and be reimbursed for their fees and expenses pursuant to the Court's Auctioneer Order and was not required to retain Arent Fox as a professional pursuant to Section 327 of the Bankruptcy Code. Counsel further contended that the debtor's reliance on the provision in the Auction Agreement which provided that disputes must be adjudicated in the Courts of New York was misplaced because the Auctioneer Order specifically reserved jurisdiction for this Court to determine any allowance of compensation or reimbursement of expenses to Sheldon Good, notwithstanding the

terms of the Auction Agreement, and the August 9th Stipulation specifically directed the

Bankruptcy Court to resolve the issue.

## DISCUSSION

### A. Jurisdiction to Determine The Application

At the outset, the Court finds that it has the authority to decide this Application.

The Auctioneer Order specifically reserved jurisdiction for this Court to determine any

allowance of compensation or reimbursement of expenses to Sheldon Good, notwithstanding the

terms of the Auction Agreement.   In addition, the August 9th Stipulation designated this Court

to make all findings with respect to this Application.

The Court further finds that Sheldon Good was not required to retain Arent Fox as

a professional pursuant to Section 327 of the Bankruptcy Code.[5] Arent Fox was not a

representative of the estate.  Sheldon Good hired Arent Fox to defend and respond to the appeals

that the debtor filed.  On June 20, 2005, this Court issued the Auctioneer Order which approved

Sheldon Good as the Auctioneer of the Properties and approved the terms and conditions of the

Auction Agreement.   As previously noted, the Auction Agreement specifically provided that the

debtor would indemnify Sheldon Good for all "liabilities, losses, damages, claims, suits, causes

of action third party actions ... including actual legal fees and costs."   Thus,  the Court's Order

obligated the debtor to reimburse Sheldon Good for legal fees and expenses incurred in

connection with the court approved auction of the Properties.

### B. Award of Reasonable Attorneys' Fees

---

[5] 11 U.S.C. §327(a) authorizes the trustee, subject to the court's approval, to employ one or more
professional persons, to represent or perform services for the estate.

The next issue before the Court is whether the reimbursement amount sought is reasonable. The Court will review the propriety of fees and expenses under the reasonableness guidelines of Section 330(a) of the Bankruptcy Code.[6]

### 1.    Assessing Reasonable Attorneys' Fees

Sheldon Good has requested reimbursement for the $134,624.00 in legal fees and $4,351.84 in expenses it incurred for Arent Fox's services. The debtor objected to the amount of fees requested stating that the legal fees and expenses billed exceeded the reasonableness standard set forth in Section 330(a) of the Bankruptcy Code.

Section 330(a)(3) provides:

In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial to the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, important and nature of the problem, issue or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field;
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases

---

[6] The Court notes that even in non-bankruptcy cases, an applicant requesting an award of fees has the burden to prove the reasonableness of such fees and vague and otherwise insufficient descriptions of services often results in a denial or reduction in the amount of fees sought. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cit.1999); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748,763-64 (2d Cir.1998); New York State Ass'n for Retarted Children v. Carey, 711 F.2d 1136, 1147 (2d. Cir.1983).

other than cases under this title.

11 U.S. C. § 330.  Rule 2016(a) of the Federal Rules of Bankruptcy Procedure implements the

standards set forth in Section 330 of the Code:

> Application for Compensation ore Reimbursement. An entity
> seeking interim of final compensation for services, or
> reimbursement of necessary expenses, from the estate shall file
> with the court an application setting forth a detailed statement
> of (1) the services rendered, the time expended and expenses
> incurred and (2) the amounts requested.

Fed.R.Bankr.P. 2016(a).  To satisfy this burden, a claimant must justify its charges with detailed,

specific, itemized documentation. In re Dimas, LLC, 357 B.R. 563, 576 (Bankr. N.D.Cal. 2006);

In re Bennett Funding Group Inc., 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997); In re Poseiden

Pools of America, Inc. 180 B.R.718,729 (Bankr. E.D.N.Y. 1995), affirmed 216 BR. 98, 100

(E.D.N.Y. 1997).   Billing records must clearly identify each discrete task billed, indicate the

date the task was performed, the precise amount of time spent (not to be billed in increments

greater than one-tenth of an hour), who performed the task, their level of experience and that

person's hourly rate. In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr .D.Vt. 2006).   The records

must be detailed enough to enable a Court to determine whether the attorneys are claiming

compensation for hours that are "redundant, excessive, or otherwise unnecessary."  Hensley, 461

U.S. at 434.  See also, In re Recycling Industries, Inc., 243 B.R. 396, 401 (Bankr. D.Colo. 2000);

In re Poseidon Pools of America, 180 BR. at 729.   Also the billing practice of aggregating

multiple tasks into one billing entry, typically referred to as "block billing," is routinely

disallowed.  This is because the practice of block billing makes it exceedingly difficult for a

Court to determine the reasonableness of the time spent on each of the individual services or

tasks provided. In re Dimas, LLC, 357 B.R. at 576; In re Fibermark, Inc., 349 B.R. at 395; In re

8

Poseidon Pools of America, 180 BR. at 729; Matter of Navis Realty, Inc., 126 BR. 137, 144 (Bankr. E.D.N.Y. 1991).  Consequently, courts will summarily disallow time for discrete legal services merged together in a fee application.   Upon review of Arent Fox's invoice, the Court makes the following adjustments based on the shortcomings contained in the time entries.

### A. Disallowance Based Upon Improper Block Billing

As noted above, fee applications which contain block billing are difficult to review because a Court has no way to determine how much time an attorney or paralegal spent on an individual task listed in the group of tasks billed.  In re Fibermark, Inc., 349 B.R. at 395; In re NWFX, Inc., 267 B.R. 118, 230 (Bankr.W.D.Ark 2001); In re Poseidon Pools of America, 180 BR. at 729; Matter of Navis Realty, Inc., 126  B.R. at 144.  A professional is required to bill each task separately. In re Fibermark, Inc., 349 B.R. at 395.  That way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task. See Molefi v. The Oppenheimer Trust, 2007 WL 538547,*7 (E.D.N.Y. February 15, 2007); In re Peterson, 2004 WL 1895201,*4 (Bankr. D.Idaho 2004).   Several bankruptcy courts have observed that block billing is not favored because

> One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

In re Worldwide Direct, Inc., 316 B.R 637, 643 (Bankr. D.Del. 2004) quoting In re Leonard Jed Co., 103 B.R. 716, 713 (Bankr. D.Md. 1989).   It is especially difficult for a Court to evaluate

9

reasonableness when a group of attorneys block bill and work together on a task without

differentiation as to how much time each attorney spent on that task.  This is because it is

unfeasible for a Court to tell if attorneys' work is complimentary, and not duplicative, since

block billing  prevents a Court from knowing whether one attorney is primarily working on a

task, and thus billing more hours, while another is simply reviewing and revising.  See Steffen

v. Senterfitt, 2007 WL 1601750, *5 (M.D. Fla. June 1, 2007); Daiwa Special Asset Corp. v.

Desnick, 2002 WL 31767817, *3 (S.D.N.Y. 2002); In re Malden Mills Industries, 281 B.R. 493,

498 (Bankr. D.Mass. 2002). See also,  In re Worldwide Direct, 316 B.R. at 643.  The billing

records here evidence a substantial amount of block billing warranting a reduction[7].  In fact,

upon review of Arent Fox's nineteen page invoice, it is difficult to find a time entry where

different individual tasks are not grouped together under one block of time.[8]

---

[7]  In instances where block billing occurs, courts have reduced legal fees in varying percentages ranging from 5% to 100%. See e.g., In re Charis Hosp., LLC, 360 B.R. 190,200 (Bankr. M.D.La. 2007)(court disallowed 50% of block billed time entries); In re Dimas, LLC, 357 B.R. at 580-82 (court disallowed 100% of block billed time entries); In re Teraforce Technology Corp., 347 B.R 838, 857 (Bankr. N.D.Tex. 2006)(court disallowed 50% of block billed time entries);  Gundlach v. Nat'l Ass'n for Advancement of Colored People, Inc., 2005 WL 2012738 (M.D. Fla. August 16, 2005)(court utilized a 30% reduction of the total legal fees claimed due to use of block billing); In re Worldwide Direct, Inc., 316 B.R. at 643 (lump sum reduction due to block billed entries) Sec. And Exch. Comm'n v. Mobley, 2000 WL 1702024, *2 (S.D.N.Y. November 13, 2000)(lump sum reduction due to block billed time entries); In re Recyling Industries, Inc., 243 B.R. at 406- 07(court disallowed 5% of total legal fees claimed due to use of block billing).

[8]  Some notable but by no means exclusive examples of this are as follows:

| Date | Attorney | Task |
|---|---|---|
| 06/08/06 | HJ Sorvino | Confer with H. Vogel re: Appeal; participate in 2nd Circuit Pre-Argument Conference with Weitz, Lester, Vogel & Burr; telephone conference with Hubbard re: Appeal; telephone conference with Kravitz re: Appeal; prepare for Pre-Argument Conference                3.6 hrs |
| 07/11/06 | HJ Sorvino | Telephone conference with Rifkin re: status; review Sifton decision; review and analyze Lester Appeal brief; conference with Vogel re: Appeal brief and Designation of Record on Appeal; confer with Indelicato re: transcripts of hearing; review Lester's Designation of Record on Appeal                4.6 hrs |
| 07/11/06 | KL Levy | Continued reviewing background materials and making notes; library |

The Court has deducted twenty percent (20%) from Sheldon Good's requested reimbursement for this improper block billing.   Across the board percentage cuts in the fees claimed are routinely utilized so that courts do not misuse their time "set[ting] forth item-by-item findings concerning what be countless objections to individual billing items", when the billing records are voluminous, as they are in this dispute. <u>McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund,</u> 450 F.3d 91, 96 (2d Cir. 2006); <u>Williamsburg Fair Housing Committee v. The New York City Housing Authority,</u> 2007 WL 486610,*5 (S.D.N.Y. February 14, 2007); <u>Daiwa Special Asset Corp.,</u> 2002 WL 31767817,*2 (citing <u>Lunday v. City of Albany,</u> 42 F.3d 131, 134 (2d Cir. 1994).  <u>See</u> <u>also,</u> In <u>re Poseidon Pools of America,</u> 180 BR. at 751; <u>In re Navis Realty, Inc.,</u> 126 B.R. at 144; <u>In re Adventist Living Ctrs., Inc.,</u> 137 B.R. 701, 706 (Bankr.N.D.Ill. 1991).

### B. Disallowance Based Upon Vague and Inadequate Entries

In order to enable the Court to determine whether the time expended is reasonable, time entries such as meetings, conferences, correspondence and telephone calls must identify the participants, describe the substance of the communications, explain its outcome and justify its necessity. <u>In re Brous,</u> 2007 WL 1705630,*9 (Bankr. S.D.N.Y. June 12, 2007); <u>In re Fibermark, Inc.,</u> 349 B.R. at 396; <u>In re Southern Diesel, Inc.,</u> 309 B.R. 810, 813 (Bankr.

---

|          |         | research on mootness; meeting with Heike Vogel                                                                                                                                                                                                                                      | 6.2 hrs |
|----------|---------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------|
| 07/12/06 | KL Levy | Reviewed library research materials on mootness, meeting with Heike Vogel and Heidi Sorvino; email correspondence with Heike; meeting with Greg Robinson about pulling all cases cited in Baker's 2nd Circuit brief, out 11/14/05 brief to the EDNY, and Judge Sifton's 11/30/05 decision | 9.5 hrs |
| 07/14/06 | KL Levy | Drafted parts of 2nd Circuit appellate brief; reviewed some cases cited in Baker's 2nd Circuit brief; email correspondence with Margery Narcisse about joint appendix; conversations with Greg Robinson about Baker's cases and his proposal to include an argument that Baker's appeal is frivolous | 2.8 hrs |

M.D.Ala. 2004); In re Hasset, Ltd., 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002). Likewise, with

respect to research or reviewing materials, the time entries must at a minimum provide a

description of the issue that is being researched or reviewed. Entries that contain such vague

characterization of the services performed as "meeting with", "conversations with", "review

materials or docket" and "draft correspondence to" fail to adequately describe the services

provided and are routinely disallowed. The table below identifies time entries which contain

services that are not adequately described.[9]

---

[9]

| Date | Attorney | Task | |
|------|----------|------|---|
| 01/24/06 | HJ Sorvino | Review Lester Stipulation; review memo from Vogel; review Lester objection to Sheldon Good fees | .8 hrs/$420 |
| 02/07/06 | HJ Sorvino | Review and revise stipulation regarding withdrawal of appeal; draft correspondence to Lester | 2.6 hrs/$1,365 |
| 05/19/06 | HJ Sorvino | Review and revise memo to Linksman | .6 hrs/$315 |
| 06/02/06 | HJ Sorvino | Telephone conference with Weitz and Hubbard regarding appeal; telephone conference with Weitz; Review memo from Vogel re: 2nd Circuit Appeal; conference with Vogel re: 2nd Circuit Appeal | 1.4 hrs/$735 |
| 06/06/06 | HJ Sorvino | Review Second Circuit docket | .2 hrs/$105 |
| 06/19/06 | HJ Sorvino | Telephone conference with Hubbard regarding motion to vacate compensation; prepare argument; conference with Vogel; telephone conference with Rifkin | 1.6 hrs/$840 |
| 06/26/06 | SL Lipstein | Review docket | .2 hrs/$38 |
| 07/06/06 | KL Levy | Meeting with Heidi Sorvino and Heike Vogel | .7 hrs/$224 |
| 07/08/06 | KL Levy | Reviewed background materials; made extensive notes | 4.9 hrs/$1,568 |
| 07/10/06 | KL Levy | Continued reviewing background materials and making notes | .8 hrs/$256 |
| 07/11/06 | KL Levy | Continued reviewing background materials and making notes; library research on mootness; meeting with Heike Vogel | 6.2 hrs/$1,984 |
| 07/12/06 | KL Levy | Reviewed library research on mootness; meeting with Heike Vogel and Heidi Sorvino; email correspondence with Heike; meeting with Greg Robinson about pulling all cases cited in Baker's 2nd Circuit brief, our 11/14/05 brief to the EDNY, and Judge Sifton's 11/30/05 decision | 9.5 hrs/$3,040 |

Since many of these time entries were also reviewed and included in the Court's reduction of the block billed time entries, the Court finds that a thirty per cent (30%) reduction of the total sum of the listed vague entries is necessary.   Accordingly, $5,112.90  shall be deducted from Sheldon Good's requested reimbursement.

**2.      Assessing Reasonable Attorneys' Costs**

Section 330(a)(1)(B) of the Bankruptcy Code states that a professional seeking reimbursement from the estate for expenses incurred in the case must furnish the Court with records containing enough specificity to establish whether a given expense was both actual and necessary.  Only fully documented expenses are reimbursable. <u>In re Fibermark</u>, 349 B.R. at 398. On the last page of its invoice, Arent Fox on behalf of Sheldon Good provided a listing of its

---

| 07/13/06 | KL Levy | Telephone conversation with Heidi Sorvino; research on mootness, pragmatic finality, nonappealability, and appendix (Local Rules); conversation with Greg Robinson; meeting with Heike Vogel                3.8 hrs/$1,216 |
|----------|---------|-------------|
| 07/24/06 | KL Levy | Incorporated 2nd Circuit cases into 2nd Circuit brief; meeting with Heidi Sorvino and Heike Vogel                1.0 hrs/$320 |
| 07/26/06 | KL Levy | Meeting with Heike Vogel and email to Margery Narcisse      .3 hrs/$96 |
| 07/28/06 | KL Levy | Meeting and conversations with Heike Vogel; meeting with David Yearwood; revised 2nd Circuit brief; drafted motion for supplemental appendix; email correspondence with David and Heike                1.8 hrs/$576 |
| 07/28/06 | LA Indelicato | Review brief and appendix, revise document references therein and edit brief; numerous discussions with Heike Vogel and Ken Levy; prepare supplemental appendix and gather documents                5.1 hrs/969 |
| 07/30/06 | KL Levy | Reviewed and revised 2nd Circuit brief; revised motion for supplemental appendix; email correspondence and conversations with Heike Vogel and David Yearwood                5.4 hrs/$1,728 |
| 07/31/06 | KL Levy | Reviewed and revised 2nd Circuit brief; conversations with David Yearwood and Heike Vogel; helped with arrangements for filing brief.                3.9 hrs/$1,248 |

--------
Total=   50.8 hrs/$17,043.00

13

actual out-of-pocket expenses.

| | |
|---|---|
| Phone charges | $0.20 |
| Telecopier | $48.00 |
| Overnight Delivery | $26.52 |
| Transcripts- Compu-Scribe, Inc. Transcript of Hearing in Aston Baker matter | $547.00 |
| Disbursements | $12.40 |
| Transcripts-Suzana Mustafa Aston Baker, Transcript dated September 7, 2005 | $135.47 |

Arent Fox's invoice stated that the total for the above listed expenses equals $4,341.84.

However, the Court's calculation of the total expenses yielded a total of $769.59.  Sheldon Good

has provided no evidentiary support to justify these itemized expenses.  Accordingly, the Court

denies the Application insofar as it seeks an award of the claimed expenses.   The denial is

without prejudice to renew upon presentation of supporting documentation for the claimed

expenses.

## CONCLUSION

The Court finds that this Court has jurisdiction to resolve the Application;

that the Auction Agreement authorized Sheldon Good to retain counsel and required the debtor

to indemnify Sheldon Good for legal fees and costs incurred; and that Sheldon Good is entitled

to reimbursement in the amount of $102,589.49 for legal fees incurred but is not entitled to

reimbursement of the $4,341.84 in claimed expenses because Sheldon Good provided no

documentation to substantiate that these were actual out-of-pocket expenses.  The denial of this

portion of the Application is without prejudice to renew upon presentation of supporting

documentation for the claimed expenses.

IT IS SO ORDERED.

Dated: Brooklyn, New York
       August 2, 2007

                                        s/Dennis E. Milton
                                        DENNIS E. MILTON
                                        United States Bankruptcy Judge